**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| MILAN KESIC and DANIELLE KESIC, | |
| Plaintiffs, | |
| v. | CAUSE NO.: 2:15-CV-411-TLS |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

**OPINION AND ORDER**

In this litigation, the Plaintiffs, Milan and Danielle Kesic, allege that the Defendant, American Family Mutual Insurance Company, breached the homeowners' insurance policy covering their residence by failing to adequately respond when the Plaintiffs made a claim under the policy. This matter is before the Court on the Defendant's Partial Motion for Summary Judgment [ECF No. 57], and all related briefing.

**FACTUAL BACKGROUND**

On February 19, 2014, Plaintiff Milan Kesic noticed that water was pouring into his custom-designed office in his residence, causing damage throughout. That same day, the Plaintiffs reported the damage due to ice damming and resulting water leakage to the Defendant.

**A.    The Policy**

When the Plaintiffs' home was damaged, it was covered by a homeowners' insurance policy with the Defendant, specifically policy number 13-DA5523-01 ("Policy").

The Policy provides that the "Loss Value Determination" for "Buildings Which Have a Permanent Foundation and Roof Insured at 100% of Replacement Cost," will be the smallest of:

"(a) the cost to replace the damaged building with like construction for similar use on the same premises;

(b) the amount actually and necessarily spent for repair of the damaged portion or replacement of the damaged building; or

(c) 120% of the **limit** applying to the damaged building."

(Policy, Ex. F to Def.'s Mot. for Summ. J., Conditions – Section I, Gold Star Homeowners Amendatory Endorsement, p. 29, ECF No. 57-1).

The Policy also provides for appraisal, by stating:

> **Appraisal**. If **you** and **we** fail to agree on the amount of loss, either may demand an **appraisal** of the loss. In this event, each party will choose a competent and disinterested appraiser within 20 days after receiving a written request from the other. The two appraisers will choose a competent and disinterested umpire. If they cannot agree upon an umpire within 15 days, **you** or **we** may request that the choice be made by a judge of a court of record in the state where the **insured premises** is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of loss. If they fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us**.

(Policy, Ex. F to Def.'s Mot. for Summ. J., "Appraisal condition," Conditions – Section I, Indiana Amendatory Homeowners Endorsement, p. 32, ECF No. 57-1).

**B.     The Claim to the Defendant**

On February 25, 2014, a Senior Adjuster working for the Defendant inspected the home with Plaintiff Milan Kesic and his contractor. During the inspection, the Plaintiffs informed the

Defendant that the residence was listed for sale and that one of their children had asthma and could not be exposed to mold or construction dust.

After the inspection, the Defendant's Senior Adjustor then prepared an initial estimate of the loss, which she emailed to the Plaintiffs' contractor on March 7, 2014. The contractor submitted his own estimate, which exceeded the Defendant's initial estimate by more than $100,000. However, the Defendant did not respond to the contractor's estimate until July 31, 2014, by which time the Plaintiffs had proceeded with repairs.

On August 18, 2014, the Defendant provided a revised estimate; however, the difference between what the Plaintiffs had now spent and the suggested coverage by the Defendant still exceeded $100,000. Although communications continued for more than a year, the parties did not reach a resolution, and this lawsuit was filed. In the Plaintiffs' Complaint, they demand "contractual damages in the amount of $135,222.38."

After this lawsuit was filed, the parties proceeded with the appraisal process under the Policy. The Plaintiffs chose their contractor as their appraiser, the Defendant chose Jeffery H. Turley as its appraiser, and the Court appointed Timothy A. Lee, P.E., M.B.A., as Umpire. At the conclusion of the appraisal process, on August 16, 2017, the Umpire set the loss replacement cost at $60,002.13.

## ANALYSIS

In the instant Motion for Summary Judgment, while not conceding liability, the Defendant seeks judgment as a matter of law on the narrow issue of the value of the breach of contract claim. To reach that question, the Defendant first argues that, under the policy, the loss

is determined by the appraisal award, and second that the loss is the only damage the Plaintiffs may reasonably receive for their breach of contract claim.

A. **Standard of Review**

Summary Judgment is appropriate when the record before the Court establishes that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Id.* at 255.

B. **The Value of the Loss Under the Policy**

The Defendant argues that, as a matter of law, the appraisal award constitutes the value of the loss under the Policy. In deciding issues of insurance coverage, the Court must apply Indiana law for contract interpretation. *See Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004) ("A federal court sitting in diversity has the obligation to apply the law of the state as it believes the highest court of the state would apply it if presented with the issue."); *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001) ("When the state Supreme Court has not decided the issue, the rulings of the state intermediate appellate courts must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently."). An insurance contract "is subject to the same rules of interpretation as are other contracts." *Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663, 666 (Ind. 2006) (quoting

*USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 537–38 (Ind. 1997)). As with other contracts, the interpretation of an insurance contract is a question of law. *Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 865 N.E.2d 571, 574 (Ind. 2007). If the contract language is clear and unambiguous, it should be given its plain meaning. *See Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002).

Under the Policy, the Defendant is only obligated to pay "the amount actually and necessarily spent for repair of the damaged portion" of the building.[1] (Policy, Ex. F to Def.'s Mot. for Summ. J., Conditions – Section I, Gold Star Homeowners Amendatory Endorsement, p. 29). This amount is referred to as the Replacement Cost under the heading of Loss Value Determination. The Policy also dictates that, if the parties "fail to agree on the amount of the loss," either may trigger the appraisal process and that a "[w]ritten agreement signed by any two of three [appraisers involved in the process] will set the amount of the loss." (Policy, Ex. F to Def.'s Mot. for Summ. J., "Appraisal condition," Conditions – Section I, Indiana Amendatory Homeowners Endorsement, p. 31). The plain language of the Policy thus dictates that the amount of the loss, here what was "actually and necessarily" spent on repairs, is the appraisal award.

In response, the Plaintiffs argue, against the Policy language, that the appraisal award was not intended to quantify the replacement cost. *See* (Pl.'s Resp., p. 24, ECF No. 62).[2] But the plain language of the Policy states otherwise: The appraisal process quantifies the "amount of the

---

[1] The other conditions listed in this provision do not apply to this case.
[2] The Plaintiffs also argue that "[w]hen read, in harmony with the 'Loss Payable' clause in the Policy, it is clear that the appraisal process is intended to quantify a loss prior to the work being performed, not after it has been completed." (Pl.'s Resp., p. 24, ECF No. 62). However, the Loss Payable Clause in the Policy only provides: "Loss will be adjusted only with the insured named and payable to the insured and the lienholder shown in the Declarations as their respective interests may appear, subject to all the terms of this policy." (Policy, Ex. F to Def.'s Mot. for Summ. J., Conditions – Section I, ¶ 8, p. 15). This clause does not appear to place any kind of temporal limit on the appraisal process, which is one of the other terms of the Policy.

loss," and, in the Plaintiffs' situation, the amount of the loss is the "amount actually and necessarily spent for repair of the damaged portion" of the building. *Cf.* (Policy, Ex. F to Def.'s Mot. for Summ. J., Conditions – Section I, Gold Star Homeowners Amendatory Endorsement, p. 32, 29). Thus, while the Replacement Cost provision does not explicitly limit itself to an appraisal award, the appraisal award does constrain the Replacement Cost. The appraisal provision is clear that the appraisal award is the amount at issue, once that process has been concluded.

The Plaintiffs' arguments against the appraisal award are further undercut by the appraisal process itself. The factual record makes clear that the Plaintiffs presented their actual repair costs to the Umpire, and he decided, agreeing with the Defendant's appraiser, that some of those costs were not necessary. *See, e.g.,* (Deposition of Lee, Ex. I to Def.'s Mot. for Summ. J., Conditions – Section I, Gold Star Homeowners Amendatory Endorsement, p. 94–104, ECF No. 57-1). Thus, the appraisal process included an evaluation of what repair costs were "actually and necessarily" spent, and the appraisal award is intended to quantify that amount.

## C.     Damages for Breach of Contract

However, even though the Defendant is correct that, as a matter of law, the amount of loss is the appraisal award, that does not necessarily limit the Plaintiffs' damages for their breach of contract claim. "Where an insurer breaches an insurance policy, recoverable damages are not defined by or restricted to the indemnity limits of the policy." *McGrath v. Everest Nat'l Ins. Co.*, 668 F. Supp. 2d 1085, 1107 (N.D. Ind. 2009) (citing *Ind. Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1090 (Ind. Ct. App. 1992)). Instead, "a party injured by a breach of contract may recover consequential damages . . . [which] may be awarded when the

non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made." *Rockford Mut. Ins. Co. v. Pirtle*, 911 N.E.2d 60, 67 (Ind. Ct. App. 2009) (citing *Thor Elec., Inc. v. Oberle & Assocs., Inc.*, 741 N.E.2d 373, 381 (Ind. Ct. App. 2000)). "A damage award must be based upon some fairly defined standard, such as cost of repair, market value, established experience, rental value, loss of use, loss of profits, or direct inference from known circumstances. The damages claimed also must be the natural foreseeable, and proximate consequence of the breach." *Otter Creek Trading Co., Inc. v. PCM Enviro PTY, LTD*, 60 N.E.3d 217, 229 (Ind. Ct. App. 2016) (citing *Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind. Ct. App. 1993)). Thus, the Plaintiffs could still recover damages in excess of the appraisal award if the alleged breach was the proximate cause of those damages.

Whether the alleged breach did cause those damages depends on the resolution of certain disputed facts. The Defendants argue that all the damages above the appraisal award are the result only of the unreasonable prices of the Plaintiffs' contractor and the Plaintiffs' own demands for how the repairs were to be carried out. The Plaintiffs argue that, to the contrary, at least some of the charges are the result of the Defendant's breach. The Plaintiffs specifically argue that, had the Defendant negotiated with them at the time and, for example, paid for the Plaintiffs to reside elsewhere while the repairs were ongoing, some of those charges might never have been incurred. As the resolution of whether the consequential damages are the result of the Defendant's alleged breach is a factual question, summary judgment limiting the Plaintiffs' damages on their breach of contract claim is inappropriate.

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendant's Partial Motion for Summary Judgment [ECF No. 57]. A telephonic status/scheduling conference is set for Wednesday June 5, 2019, at 2:00 PM (CDT).

SO ORDERED on May 31, 2019.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT